## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KEANNA LOMAX** | * | |
| **757 Lennox Street, Apt. F** | | |
| **Baltimore, MD 21217**, *on behalf* | * | |
| *of herself and others similarly* | | |
| *situated*, | * | |
| | | |
| **Plaintiff**, | * | |
| | | |
| **vs.** | * | **Civ. Action No. 13-cv-1442** |
| | | |
| **WEINSTOCK, FRIEDMAN &** | * | |
| **FRIEDMAN, P.A.** | | |
| **4 Reservoir Circle** | * | |
| **Baltimore, MD 21208** | | |
| | * | |
| **Serve on:** | | |
| | * | |
| **Jeffrey M. Lippman** | | |
| **4 Reservoir Circle** | * | |
| **Baltimore, MD 21208,** | | |
| | * | |
| **Defendant.** | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Now comes KEANNA LOMAX, by and through her attorneys, E. David Hoskins, Max F. Brauer and The Law Offices of E. David Hoskins, LLC, and on behalf of herself and all others similarly situated alleges as follows:

## <u>INTRODUCTION</u>

1.    Plaintiff KEANNA LOMAX brings this class action seeking redress for the illegal practices of Defendant WEINSTOCK, FRIEDMAN & FRIEDMAN,

P.A. ("WEINSTOCK") in connection with the collection of debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (the "MCDCA"); the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.* (the "MCPA").

2.     KEANNA LOMAX and the Class she seeks to represent are consumers whose motor vehicle purchases were financed through credit contracts, but whose vehicles were repossessed and ultimately sold by the credit provider. Maryland law establishes statutory requirements for providing notice in connection with the repossession and sale of the vehicles purchased by KEANNA LOMAX and the Class. The information to be disclosed differs significantly depending upon whether the repossessed vehicle is sold at a public auction or at a private sale. If the statutory notice requirements are fulfilled, the credit provider may sue the borrower for any deficiency remaining on the credit contract after the proceeds from the auction or sale are applied to the balance. If the requirements are not fulfilled, the credit provider is prohibited from suing the borrower for any deficiency.

3.     WEINSTOCK is a debt collecting law firm that was retained to bring suits to recover credit contract deficiencies remaining after the vehicles owned by KEANNA LOMAX and the Class were repossessed and sold at an auction held at

Manheim Baltimore Washington ("Manheim"). At the time of the sales of the repossessed vehicles, the credit grantor assumed, incorrectly, that the Manheim auction constituted a public sale and did not provide the statutory notice required for private sales to KEANNA LOMAX and the Class.

4.     On March 1, 2013, the Maryland Court of Appeals issued its opinion in *Gardner v. Ally Financial Inc.*, Misc. No. 10, September Term, 2012, and ruled as a matter of law that the auctions held by Manheim are not public sales because Manheim charges individuals wishing to attend and observe the sale a refundable cash deposit of $1,000.00, which restricted access to the sales.

5.     The result of this ruling was that credit grantors who had sold repossessed vehicles at the Manheim auctions up to that point, but who had not provided the statutory notice required for a private sale, were no longer legally entitled to collect any deficiency remaining after the proceeds of the sale were applied to the loan balance.

6.     Although many credit grantors and debt collecting law firms immediately dismissed lawsuits that were pending when the *Gardner* ruling was issued, WEINSTOCK has continued to pursue litigation against unsuspecting consumers despite having actual knowledge that there is no legal basis for the claims it is asserting on behalf of credit grantors. WEINSTOCK has also filed new lawsuits after March 1, 2013 seeking to collect loan balance deficiencies from

Maryland consumers despite having actual knowledge that there is no legal justification for the claim it is asserting on behalf of the credit grantor.

**FAIR DEBT COLLECTION STATUTES**

7.     KEANNA LOMAX alleges that the collection practices of WEINSTOCK violate the FDCPA, MCDCA and MCPA because they constitute illegal efforts to collect a consumer debt.

8.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b).

9.     Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

10.     The FDCPA is a comprehensive statute that prohibits a catalog of

activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

11.    The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

12.    The FDCPA is a remedial statute that is construed liberally in favor

of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808 (M.D.N.C. 2011); *Sprinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

13.    To prohibit abuses by debt collectors, the FDCPA, at 15 U.S.C. § 1692e, provides that a debt collector may not use "any false deceptive, or misleading representation or means in connection with the collection of any debt." In addition, the FDCPA at 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

14.    The MCDCA prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md. Code Ann., Com. Law §§ 14–201 to 14–204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id*. § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id*. § 14–202(8).

15.    The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md. Code Ann., Com. Law § 13–301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id*. § 13–301(14)(iii).

## JURISDICTION AND VENUE

16.     Jurisdiction arises under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. § 1331.

17.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

18.     Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b), in that WEINSTOCK transacts business in this District and a substantial portion of the acts that give rise to the claim occurred within this District. Additionally, KEANNA LOMAX resides within the District of Maryland.

## PARTIES

19.     Plaintiff, KEANNA LOMAX, is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person improperly sued by WEINSTOCK in the attempt to collect a consumer debt allegedly owed on a car loan assigned to Credit Acceptance Corporation. KEANNA LOMAX is a "person" as that term is defined by the MCDCA and the MCPA.

20.     Defendant WEINSTOCK is a domestic corporation and is licensed as a debt collector in Maryland. WEINSTOCK is regularly engaged, for profit, in the collection of debts allegedly owed by consumers. WEINSTOCK uses the United States Mail in furtherance of its collection of debts alleged to be due another.

21.     At all relevant times WEINSTOCK acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of

the MCDCA.

## FACTUAL ALLEGATIONS

22.    Credit Acceptance Corporation financed the purchase of a vehicle by KEANNA LOMAX, and other members of the Class she represents. The total sales price of the vehicle was $6,350.58, of which $2,500.00 was paid in a cash down payment with the remaining $3,860.58 financed through a retail installment contract. The term of the loan was 27 months, with the first payment due on March 24, 2009. The annual percentage rate of interest charged for the loan resulted in a "Finance Charge" of $1,029.14.

23.    The loan is governed by Maryland's Credit Grantor Closed End Credit Provisions (hereafter abbreviated as "CLEC").

24.    As part of the Loan, KEANNA LOMAX provided Credit Acceptance Corporation a security interest in a used 2003 Oldsmobile.

25.    Despite the fact that KEANNA LOMAX had already repaid more than $3,000 on the loan, and more than $5,500 for the vehicle, Credit Acceptance Corporation repossessed the vehicle on December 23, 2010, after she fell behind on her payments.

26.    Credit Acceptance Corporation subsequently sold KEANNA LOMAX's vehicle for only $300 at an auction held at Manheim Baltimore Washington ("Manheim"), claiming that the auction constituted a public sale.

27.    The Maryland Court of Appeals ruled on March 1, 2013 that, as a matter of law, the auctions held by Manheim up to that point were not public sales because Manheim charged individuals wishing to attend and observe the sale a refundable cash deposit of $1,000.00, which restricted access to the sales. The admission fee obscured the transparency of the sales because bidders and interested parties would have had to accumulate and part with money, at least temporarily, in order to merely observe the auction. Manheim changed this practice shortly after March 1, 2013.

28.    As a result of the Court of Appeals' ruling, Credit Acceptance Corporation failed to comply with the provisions of Md. Commercial Law § 12-1021, and therefore, pursuant to Md. Commercial Law § 12-1021(k) was not entitled to any deficiency judgment under the loan agreement.

29.    Under Section 12-1021, if a lender wants to preserve the option to sue for a deficiency judgment, it must serve four notices to a consumer during the repossession and disposition process. *See* Md. Code Ann., Com. Law § 12-1021(k) (4) ("If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the lender shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement.").

30.    The first notice must be served and delivered at least ten days prior

to repossession. *See* Md. Code Ann., Com. Law § 12-1021(c)(1) ("At least 10 days before he repossesses any goods, a lender may serve a written notice on the borrower of his intention to repossess the goods. . . The notice may be delivered to the borrower personally or sent to him at his last known address by registered or certified mail."). This notice is required to state the default and state any period at the end of which the goods will be repossessed. The notice must also state the rights of the borrower in case the goods are repossessed.

31.     The second notice must be delivered to the consumer within 5 days after repossession. Md. Code Ann., Com. Law § 12-1021(e). This notice must state the right of the borrower to redeem the goods, and the amount payable for them. The notice must also state the rights of the borrower as to a resale, and her liability for a deficiency. Finally, the notice must disclose the exact location where the goods are stored and the address where any payment is to be made of notice delivered.

32.     The third notice advises the consumer of the time and place of the sale and must be delivered to the consumer at least 10 days before the sale. Md. Code Ann., Com. Law § 12-1021(j)(1)(ii).

33.     The fourth notice is sent after the vehicle is sold. If the sale is a private sale, the fourth notice sent by the credit grantor is governed by Md. Code Ann., Com. Law § 12-1021(j)(2), which requires that a full accounting shall be

made to the borrower in writing. If the sale is at a public auction, the fourth notice sent by the lender is subject to Md. Code Ann., Com. Law § 12-1021(k)(3), which does not require the level of accounting required by § 12-1021(j)(2).

34.    Specifically, because the sale of the KEANNA LOMAX's repossessed vehicle was at a private sale, Credit Acceptance Corporation was required to provide more detailed information required by § 12-1021(j)(2), including the (i) the purchaser's name, address and business address; (ii) the number of bids sought and received; and (iii) the condition of the goods at the time of repossession which would have caused their value to be increased or decreased above or below the market value for goods of like kind and quality.

35.    Credit Acceptance Corporation did not provide this notice, but instead provided the § 12-1021(k)(3) notice, which only applies in situations where the repossessed automobile is sold at a public auction. In other words, the form notice used by Credit Acceptance Corporation violated the statutory notice requirements of CLEC because it failed to provide (1) the name and address of the purchaser, (2) the number of bids sought, (3) the number of bids received, and (4) any information about the condition of the vehicle at the time of sale that would cause an increase or decrease above or below the market value for goods of like kind or quality.

36.    On October 13, 2011, WEINSTOCK sued KEANNA LOMAX in the

District Court for Baltimore City, seeking a deficiency judgment for $2,795.96 in unpaid loan principal, interest of $388.53 and an attorney's fee of $419.39.

37.     WEINSTOCK failed to serve KEANNA LOMAX with the complaint until January 13, 2013.

38.     On March 1, 2013, the Maryland Court of Appeals issued its opinion in *Gardner v. Ally Financial Inc.*, Misc. No. 10, September Term, 2012, and ruled as a matter of law that the auctions held by Manheim are not public sales because Manheim charges individuals wishing to attend and observe the sale a refundable cash deposit of $1,000.00, which restricted access to the sales.

39.     Once the *Gardner* opinion was issued, Credit Acceptance Corporation lacked legal authority to collect post repossession deficiencies in cases that were filed but not finally resolved before March 1, 2013, where the automobiles were sold at an auction held at Manheim Baltimore Washington because Credit Acceptance Corporation had not provided the required "private sale" notice.

40.     Notwithstanding this fact, WEINSTOCK continued in its attempts to collect a post repossession deficiency from KEANNA LOMAX by continuing to pursue the lawsuit it had brought against her.

41.     KEANNA LOMAX was required to retain counsel to defend the collection lawsuit and incurred actual damages in the amount of the value of legal

services provided to get the case dismissed. *See Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn. Ct. App. 1984) (awarding damages of $3,900 for attorney fees for defending prior suit filed in distant forum violating FDCPA); *Henriquez v. Henriquez*, 185 Md. App. 465 (2009) (recognizing that the value of the legal services provided to a client on a pro bono basis can still be collected from the opposing party).

<u>**DEFENDANT'S POLICIES AND PRACTICES**</u>

42.    It is the standard policy and practice of WEINSTOCK to ignore the *Gardner* ruling and continue to collect post repossession deficiencies in cases pending on and filed after March 1, 2013, despite having actual knowledge that in theses cases the Manheim auctions were private sales and that the required private sale notice had not been provided to the consumers they were suing.

43.    This standard policy and practice violates §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f and 1692f(1) of the FDCPA, which prohibit,

> **§ 1692e. False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .**
>
> **(2) The false representation of--**
>
> **(A) the character, amount, or legal status of any debt; or**

\*       \*       \*

*(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.*

\*       \*       \*

*(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.*

*§ 1692f. Unfair Practices*

*A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*

*(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*

44.     These standard policies and practices also constitute violations of the

§ 14-202(8) of the MCDCA, which prohibits

*Proscribed conduct*

*In collecting or attempting to collect an alleged debt a collector may not:*

*(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.*

14

45.   Although other debt collecting law firms voluntarily dismissed similar lawsuits, WEINSTOCK continued to pursue frivolous claims against members of the class. WEINSTOCK's actions in continuing to litigate these frivolous claims had a tendency to mislead the least sophisticated consumer into concluding that a legally sufficient claim had been asserted against them.

46.   WEINSTOCK's failure to voluntarily dismiss these frivolous claims had the tendency of misleading the least sophisticated consumer into concluding that they were obligated to pay the amount of the deficiency, thereby creating unfair pressure on the least sophisticated consumer to enter into a settlement to repay the deficiency or, worse, to decide not to contest the claim and allow an affidavit judgment to be entered against them.

47.   A review of records available from the District Court of Maryland establishes that other Maryland consumers have been treated in the same manner as WEINSTOCK has treated KEANNA LOMAX .

### CONSUMERS TK and SA

48.   WEINSTOCK sued Consumers TK and SA on behalf of Credit Acceptance Corporation on August 20, 2012, seeking a judgment for a post repossession deficiency in the amount of $16,597.20, plus interest of $8,966.94 and attorney's fees of $2,489.58. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK failed to attach to its complaint a Notice of Disposition

of Repossessed Vehicle that provided the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumers TK and SA were not legally obligated to pay any deficiency balance on the loan.

49.   WEINSTOCK continued to pursue this lawsuit after March 1, 2013, and, on May 7, 2013, obtained an affidavit judgment against Consumer TK on a frivolous claim.

## CONSUMERS DC and MJ

50.   WEINSTOCK sued Consumers DC and MJ on behalf of Credit Acceptance Corporation on January 14, 2013, seeking a judgment for a post repossession deficiency in the amount of $9,504.61, plus interest of $1,767.90 and attorney's fees of $1,425.69. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumers DC and MJ were not legally obligated to pay any deficiency balance on the loan.

51.   WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumers DC and MJ and on March 5, 2013, after the Court of Appeals had issued its decision in *Gardner,* filed requests for renewal of the

summonses addressed to Consumers DC and MJ.

## CONSUMERS PB and TS

52.     WEINSTOCK sued Consumers PB and TS on behalf of Credit Acceptance Corporation on January 15, 2013, seeking a judgment for a post repossession deficiency in the amount of $5,199.66, plus interest of $2,120.73 and attorney's fees of $1,976.73. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumers PB and TS were not legally obligated to pay any deficiency balance on the loan.

53.     WEINSTOCK continued to pursue this lawsuit after March 1, 2013, and Consumers PB and TS were deceived into believing that they were legally responsible to pay the amount they had been sued for. On March 18, 2013, Consumers PB and TS appeared in Court and provided the clerk with Notices of Intention to Defend. Consumer PB stated in his Notice that "I agree that I owe the money but I have know (sic) income at the moment. Trying to set up a payment plan." Consumer TS stated in her Notice "I agree that I . . .  owe the amount in claim but am unable to work due to my daughter's illness."

54.     As the result of these Notices, the District Court entered an affidavit

judgment on behalf of WEINSTOCK's client on March 29, 2013, on a frivolous claim.

## **CONSUMERS AF and WC**

55.    WEINSTOCK sued Consumers AF and WC on behalf of Credit Acceptance Corporation on February 5, 2013, seeking a judgment for a post repossession deficiency in the amount of $6,408.07, plus interest of $2,013.23 and attorney's fees of $961.21. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumers AF and WC were not legally obligated to pay any deficiency balance on the loan.

56.    WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumers AF and WC and on March 25, 2013, filed requests for renewal of the summonses addressed to Consumers AF and WC.

## **CONSUMER RS**

57.    WEINSTOCK sued Consumer RS on behalf of Credit Acceptance Corporation on February 21, 2013, seeking a judgment for a post repossession deficiency in the amount of $4,360.78, plus interest of $1,229.22 and attorney's fees of $654.12. The vehicle at issue was sold at a private sale at Manheim.

WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer RS was not legally obligated to pay any deficiency balance on the loan.

58.    WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumer RS.

## **CONSUMERS VQ and TS**

59.    WEINSTOCK sued Consumers VQ and TS on behalf of Credit Acceptance Corporation on March 19, 2013, after the Court of Appeals had issued its decision in *Gardner,* seeking a judgment for a post repossession deficiency in the amount of $13,178.19, plus interest of $2,130.73 and attorney's fees of $1,976.73. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumers VQ and TS were not legally obligated to pay any deficiency balance on the loan.

60.    WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumers VQ and TS.

## **CONSUMER MA**

61.     WEINSTOCK sued Consumer MA on behalf of Credit Acceptance Corporation on March 20, 2013, seeking a judgment for a post repossession deficiency in the amount of $4,873.51, plus interest of $826.42 and attorney's fees of $731.03. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer MA was not legally obligated to pay any deficiency balance on the loan.

62.     WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumer MA.

## **CONSUMER HW**

63.     WEINSTOCK sued Consumer HW on behalf of Credit Acceptance Corporation on March 21, 2013, seeking a judgment for a post repossession deficiency in the amount of $12,344.36, plus interest of $2,117.61 and attorney's fees of $1,851.65. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private

sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer HW was not legally obligated to pay any deficiency balance on the loan.

64.     WEINSTOCK is continuing to pursue this litigation notwithstanding the fact that Consumer HW filed a Notice of Intention to Defend stating that he did not owe any money to WEINSTOCK's client.

## CONSUMER LW

65.     WEINSTOCK sued Consumer LW on behalf of Credit Acceptance Corporation on March 21, 2013, seeking a judgment for a post repossession deficiency in the amount of $7,216.06, plus interest of $1,726.99 and attorney's fees of $1,082.41. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer LW was not legally obligated to pay any deficiency balance on the loan.

66.     WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumer LW.

## CONSUMER FJ

67.     WEINSTOCK sued Consumer FJ on behalf of Credit Acceptance Corporation on March 21, 2013, seeking a judgment for a post repossession

deficiency in the amount of $6,136.28, plus interest of $648.09 and attorney's fees of $920.44. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer FJ was not legally obligated to pay any deficiency balance on the loan.

68.    WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumer FJ.

### **CONSUMERS DB and CB**

69.    WEINSTOCK sued Consumers DB and CB on behalf of Credit Acceptance Corporation on March 26, 2013, seeking a judgment for a post repossession deficiency in the amount of $9,213.68, plus interest of $1,834.90 and attorney's fees of $1,382.05. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumers DB and CB were not legally obligated to pay any deficiency balance on the loan.

70.    WEINSTOCK is continuing to pursue this litigation and has obtained

service on Consumers DB and CB, neither of whom has filed a timely Notice of Intention to Defend. It is likely that an affidavit judgment will ultimately be entered against Consumers DB and CB on a frivolous claim.

## CONSUMER AC

71. WEINSTOCK sued Consumer AC on behalf of Credit Acceptance Corporation on March 28, 2013, seeking a judgment for a post repossession deficiency in the amount of $3,362.74, plus interest of $510.54 and attorney's fees of $504.41. The vehicle at issue was sold at a private sale at Manheim. WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer AC was not legally obligated to pay any deficiency balance on the loan.

72. WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumer AC.

## CONSUMER LB

73. WEINSTOCK sued Consumer LB on behalf of Credit Acceptance Corporation on March 28, 2013, seeking a judgment for a post repossession deficiency in the amount of $4,883.89, plus interest of $691.14 and attorney's fees of $732.58. The vehicle at issue was sold at a private sale at Manheim.

WEINSTOCK attached to its complaint a Notice of Disposition of Repossessed Vehicle that provided the information required for a public auction, but did not include the level of accounting required by CLEC § 12-1021(j)(2) for a private sale. For this reason, by operation of CLEC § 12-1021(k)(4), Consumer LB was not legally obligated to pay any deficiency balance on the loan.

74.    WEINSTOCK is continuing to pursue this litigation and attempting to obtain service on Consumer LB.

## <u>CLASS ALLEGATIONS</u>

75.    KEANNA LOMAX brings this action on behalf all natural persons who at any time within three years prior to the filing of this complaint were a party to a lawsuit that had not been finally resolved prior to March 1, 2013:

a.    Filed and maintained by the WEINSTOCK firm;

b.    To collect a post repossession deficiency judgment,

c.    Involving a repossessed automobile sold at an auction held at Manheim Baltimore Washington ("Manheim") prior to March 1, 2013;

d.    When the consumer was not provided a post sale notice including the (i) the purchaser's name, address and business address; (ii) the number of bids sought and received; and (iii) the condition of the goods at the time of repossession which would have caused their value to be increased or decreased above or below the market value for goods of like kind and quality;

e.    A sub-class eligible for FDCPA statutory damages includes Class members who were a party to a lawsuit that was pending or filed within one year of the filing of this lawsuit

76.    The identities of all Class members are readily ascertainable from the records of Defendants.

77.    Excluded from the Class are all managers and directors of Defendants and members of their immediate families, and legal counsel for either side and all members of their immediate families.

78.    This action has been brought and may properly be maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation:

a.    ***Numerosity:*** The Class is so numerous that joinder of all members is impractical. In addition to the 19 consumers discussed above, it is alleged on information and belief that there are in excess of 100 additional members of the Class. A recent review of District Court of Maryland court records discloses far in excess of 500 lawsuits filed on behalf of Credit Acceptance Corporation since June 1, 2012. Although not all of these lawsuits were filed by WEINSTOCK or involve post repossession private sales at Manheim, the sample of cases discussed above demonstrates that the Class is too numerous for joinder.

b.   ***Common Questions Predominate:*** There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual Class members. The principal issue in this case is whether WEINSTOCK violated §§ 1692e; 1692e(2)(A); 1692e(5); 1692e(10) 1692f and 1692f(1) of the FDCPA, MCDCA and MCPA by ignoring the *Gardner* ruling and continuing to collect post repossession deficiencies in cases filed before March 1, 2013, despite having actual knowledge that Manheim auction constituted a private sale and that the required private sale notice had not been provided to the consumers they were suing.

c.   ***Typicality:*** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have claims arising out of WEINSTOCK's common course of conduct complained of herein.

d.   ***Adequacy:*** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is committed to vigorously litigate this matter. Plaintiff has retained counsel experienced in handling class claims and claims involving unlawful collection practices. Neither Plaintiff nor Plaintiffs counsel have any interests which might cause them not to vigorously pursue this claim.

e.   ***Superiority:*** A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual

joinder of all members would be impracticable. Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since individual Class member's claims for damages are relatively modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. An important public interest will be served by addressing the matter as a Class action, substantial economies to the litigants and to the judicial system will be realized, and the potential for inconsistent or contradictory adjudications will be avoided.

79.     Certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     The questions of law and fact common to the members of the class predominate over any questions affecting an individual member.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CAUSE OF ACTION
### (The Fair Debt Collection Practices Act)

80.     KEANNA LOMAX incorporates the foregoing paragraphs.

81.     Defendant WEINSTOCK violated §§ 1692e; 1692e(2)(A); 1692e(5);

1692e(10) 1692f and 1692f(1) of the FDCPA by, after the *Gardner* ruling, continuing to collect post repossession deficiencies in cases pending on and filed after March 1, 2013, despite having actual knowledge that in theses cases the Manheim auctions were private sales and that the required private sale notice had not been provided to the consumers they were suing.

82.   The false and deceptive conduct alleged herein was material. WEINSTOCK continued to pursue claims on behalf of Credit Acceptance Corporation in the hopes of obtaining affidavit judgments or inducing settlements when it knew or should have known that there was no legal basis to assert a claim for a loan balance deficiency in cases where the repossessed vehicles had been sold at Manheim prior to March 1, 2013.

83.   The false and deceptive conduct alleged herein had the tendency to mislead the least sophisticated consumer into concluding that WEINSTOCK had asserted a valid claim for damages against him or her.

84.   As a direct consequence of WEINSTOCK's acts, practices and conduct, KEANNA LOMAX and the Class she seeks to represent suffered actual damages, including having to respond to collection lawsuits improperly brought against them, having money judgments wrongfully entered against them, all resulting in embarrassment, emotional distress, anger and frustration and causing actual injury or loss.

85.   The one year FDCPA limitations is measured from the date of service of the debt collection lawsuit. Additionally, WEINSTOCK's conduct after March 1, 2013, constitute violations of the FDCPA independent of the filing the collection lawsuit.

WHEREFORE, KEANNA LOMAX requests the following relief from WEINSTOCK:

a.   The Court enter judgment in favor of KEANNA LOMAX and the Class she seeks to represent against WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. in the maximum amount of statutory damages provided under 15 U.S.C. § 1692k;

b.   The Court enter judgment for actual damages in favor of KEANNA LOMAX and members of the Class she seeks to represent against WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. in the amount of all sums paid by the members of the Class to WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. as well as the value of any legal services provided by attorneys defending Class members in such collection lawsuits;

c.   The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to KEANNA LOMAX and members of the Class she seeks to represent;

d.   The Court award to KEANNA LOMAX and members of the

Class she seeks to represent reasonable counsel fees and the costs of these proceedings;

e.    The Court order such other and further relief as the nature of this case may require.

## SECOND CAUSE OF ACTION
### (The Maryland Consumer Debt Collection Act)

86.    KEANNA LOMAX incorporates the foregoing paragraphs.

87.    KEANNA LOMAX and the Class she seeks to represent incurred a debt which was primarily for personal, family, or household purposes and is therefore a "consumer transaction" as that term is defined by the Maryland Consumer Debt Collection Act.

88.    Defendant WEINSTOCK violated § 14-202(8) of the MCDCA by, after the *Gardner* ruling, continuing to collect post repossession deficiencies in cases pending on and filed after March 1, 2013, despite having actual knowledge that in theses cases the Manheim auctions were private sales and that the required private sale notice had not been provided to the consumers they were suing.

89.    As a direct consequence of WEINSTOCK's acts, practices and conduct, KEANNA LOMAX and the Class she seeks to represent suffered actual damages, including having to respond to collection lawsuits improperly brought against them, having money judgments wrongfully entered against them, all

resulting in embarrassment, emotional distress, anger and frustration and causing actual injury or loss.

WHEREFORE, Plaintiff requests the following relief from Defendants:

a.  The Court enter judgment for actual damages in favor of KEANNA LOMAX and members of the class she seeks to represent against WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. in the amount of all sums paid by the members of the Class to WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. as well as the value of any legal services provided by attorneys defending Class members in such collection lawsuits;

b.  The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to KEANNA LOMAX and members of the Class she seeks to represent;

c.  The Court award to KEANNA LOMAX and members of the Class she seeks to represent reasonable counsel fees and the costs of these proceedings;

d.  The Court order such other and further relief as the nature of this case may require.

### THIRD CAUSE OF ACTION
### (The Maryland Consumer Protection Act)

90.  KEANNA LOMAX incorporates the foregoing paragraphs.

91.  KEANNA LOMAX and the Class she seeks to represent are

31

consumers as defined by the Consumer Protection Act ("CPA"), Maryland Code Annotated, Commercial Law § 13-101(c).

92.   Under § 13-301(14)(iii) of the CPA, unfair or deceptive trade practices also include any violation of the MCDCA.

93.   Defendant WEINSTOCK violated § 13-301(14)(iii) of the CPA by, after the *Gardner* ruling, continuing to collect post repossession deficiencies in cases pending on and filed after March 1, 2013, despite having actual knowledge that in theses cases the Manheim auctions were private sales and that the required private sale notice had not been provided to the consumers they were suing.

94.   As a direct consequence of WEINSTOCK's acts, practices and conduct, KEANNA LOMAX and the Class she seeks to represent suffered actual damages, including having to respond to collection lawsuits improperly brought against them, having money judgments wrongfully entered against them, all resulting in embarrassment, emotional distress, anger and frustration and causing actual injury or loss.

WHEREFORE, Plaintiff requests the following relief from Defendants:

a.   The Court enter judgment for actual damages in favor of KEANNA LOMAX and members of the Class she seeks to represent against WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. in the amount of all sums paid by

the members of the Class to WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. as well as the value of any legal services provided by attorneys defending Class members in such collection lawsuits;

b.      The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to KEANNA LOMAX and members of the Class she seeks to represent;

c.      The Court award to KEANNA LOMAX and members of the Class she seeks to represent reasonable counsel fees and the costs of these proceedings;

d.      The Court order such other and further relief as the nature of this case may require.

## **JURY DEMAND**

KEANNA LOMAX hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should KEANNA LOMAX prevail on any of her claims in this action.

Respectfully Submitted,


/s/ E. David Hoskins
E. David Hoskins, Bar No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
dhoskins@hoskinslaw.com


/s/ Max F. Brauer
Max F. Brauer, Bar No. 30162
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
dhoskins@hoskinslaw.com