# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEANNA LOMAX, *on behalf of herself and others similarly situated* | : <br> : <br> : |
| v. | :    Civil No. CCB-13-1442 <br> : <br> : |
| WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. | : <br> : |

## MEMORANDUM

Plaintiff Keanna Lomax filed this action against Weinstock, Friedman & Friedman, P.A. ("Weinstock"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA"). Weinstock has filed a motion to dismiss or, in the alternative, to stay the action and compel arbitration.[1] The parties have fully briefed the issues, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion will be granted.

## BACKGROUND

Lomax financed the purchase of a car with a loan obtained through a retail installment contract ("the RISC") with Credit Acceptance Corporation ("CAC"). (Am. Compl. ¶ 22, ECF No. 10). The terms of the RISC are governed by Maryland's Credit Grantor Closed End Credit Provisions ("the CLEC"), Md. Code Ann., Comm. Law § 12-1001 *et seq*. (Am. Compl. ¶ 23). To secure the loan, Lomax gave CAC a security interest in the car. (Am. Compl. ¶ 24). When she fell behind on her payments, CAC repossessed the car in December 2010, and sold it at auction for $300 through the Manheim auction company. (Am. Compl. ¶¶ 25, 26). CAC then

---

[1] Given that Lomax amended her complaint, as a matter of course, on August 14, 2013, after Weinstock filed its motion to dismiss, the court will review the motion to dismiss as directed at the amended complaint. *See Superior Bank, F.S.B. V. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 308 n.11 (D. Md. 2000).

1

sought a deficiency judgment against Lomax for the remaining amount due on the loan, retaining Weinstock, a law firm, to file suit on its behalf. (Am. Compl. ¶¶ 3, 36). Weinstock filed suit against Lomax in the Maryland District Court for Baltimore City on October 13, 2011. (Am. Compl. ¶ 36).

Lomax claims Weinstock violated the FDCPA, the MCDCA, and the MCPA by maintaining suit against her for a deficiency judgment when CAC had not provided the requisite notice of the sale under the CLEC.[2] (Am. Compl. ¶¶ 29, 39-40, 86, 93, 98). Lomax purports to bring suit on behalf of herself and all persons similarly situated. (Am. Compl. ¶ 80).

The RISC, between Lomax and CAC, included an agreement to arbitrate various disputes between the two parties. Weinstock claims the arbitration agreement covers the dispute in this case and on those grounds moves to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim, pursuant to Rule 12(b)(6), or, in the alternative, to stay the action and compel arbitration. Under the Federal Arbitration Act ("FAA"), a court must, upon motion by a party, stay any proceeding that involves an issue subject to arbitration under a written arbitration agreement.[3] 9 U.S.C. § 3. If all issues are arbitrable, dismissal may be a proper remedy as well.[4] *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) (noting there is some disagreement over whether dismissal is a proper remedy where all claims are subject to arbitration, but not resolving the issue); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-710 (4th Cir.

---

[2] According to Lomax, Weinstock only met the notice requirements for collecting a deficiency judgment after a public sale, when it actually had to provide notice as required for private sales. (Am. Compl. ¶¶ 38, 29, 35). Her claim is based on a Maryland Court of Appeals decision, issued after Lomax's car was sold at auction and Weinstock filed suit against her, in which the court found certain sales through Manheim were private sales instead of public sales as the creditors originally thought. *See Gardner v. Ally Fin. Inc.*, 61 A.3d 817 (Md. 2013).
[3] Lomax does not appear to dispute that the FAA governs the agreement at issue here. (*See, e.g.*, Pl.'s Opp'n, at 4).
[4] Lomax did not request a stay as an alternative to dismissal.

2

2001) (noting that dismissal is a proper remedy when all issues are arbitrable); *Davidson v. Becker*, 256 F. Supp. 2d 377, 384 (D. Md. 2003) (same). Accordingly, a party may properly invoke the FAA through a motion to dismiss. *See id.*

### STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[W]hile a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). The plaintiff bears the

burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008). Moreover, "[w]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings . . . ." *Blitz v. Napolitano*, 700 F.3d 733, 736 n.3 (4th Cir. 2012) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

Courts have found it proper to dismiss claims subject to arbitration agreements under both Rule 12(b)(1) and Rule 12(b)(6). *Compare Jensen v. Klayman*, 115 F. App'x 634, 634 (4th Cir. 2004) (affirming the district court's finding that dismissal pursuant to Rule 12(b)(1) would be appropriate because of an arbitration agreement between the parties),[5] *and Muigai v. IMC Constr., Inc.*, 2011 WL 1743287, at *2-5 (D. Md. 2011) (dismissing under Rule 12(b)(1)), *with Cheraghi v. MedImmune, LLC*, 2011 WL 6047059, at *2 (D. Md. 2011) (treating a motion to dismiss because the claims were subject to arbitration as a motion under Rule 12(b)(6)), *and Davidson*, 256 F. Supp. 2d at 378 (same). This court has previously dismissed a suit under Rule 12(b)(1) where the claims were subject to arbitration. *Iraq Middle Mkt. Dev. Found. v. Al Harmoosh*, 769 F. Supp. 2d 838, 840, 843 (D. Md. 2011). The court does not need to decide under which rule Weinstock's motion is more appropriately considered because dismissal is proper under either here.

## ANALYSIS

Parties must submit claims to arbitration where they have a valid arbitration agreement and it covers the issues in dispute. *See Aggarao*, 675 F.3d at 375. "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal

---

[5] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels*, 252 F.3d at 710; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms . . . including terms that 'specify with whom [the parties] choose to arbitrate.'" *Am. Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013) (alteration in original) (citations omitted).

Lomax does not appear to dispute the validity of the RISC or the arbitration agreement within it. (Am. Compl. ¶ 43). Instead, she argues that Weinstock, as a nonsignatory to the RISC, cannot invoke the arbitration clause, and, even if it could, that her claims would not fall within the range of issues covered by it. Her arguments are without merit, and the RISC requires that she pursue her claims against Weinstock through arbitration.

**I. Weinstock's Ability to Invoke the Arbitration Clause against Lomax**

Although it is well-settled that a nonsignatory to a contract requiring arbitration can, in certain instances, enforce the arbitration provision against a signatory, *Int'l Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000), the parties disagree as to whether federal or state law controls the issue, (*see* Pl.'s Opp'n, ECF No. 11, at 4 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 632 (2009)); Reply, ECF No. 12, at 7-8 (citing *Thompson v. Witherspoon*, 12 A.3d 685, 692 (Md. App. 2011))). Under either, however, equitable estoppel provides a basis for Weinstock to enforce the arbitration agreement between Lomax and CAC in this case.

The Fourth Circuit has held that a signatory is required to submit claims against a

nonsignatory to arbitration, under the doctrine of equitable estoppel, "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement." *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (citation and internal quotation marks omitted). The signatory does not have to make a breach of contract claim in order to be estopped from disclaiming the arbitration provision of the contract. *Am. Bankers*, 453 F.3d at 627-28. "Instead, estoppel is appropriate if 'in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement.'" *Id.* at 628 (alteration in original) (citation omitted). Maryland courts apply the same standard, holding that "[t]he doctrine of equitable estoppel permits non-signatories to enforce an arbitration provision . . . when a signatory must rely on the terms of the written agreement [containing the arbitration clause] in asserting [its] claims." *Griggs v. Evans*, 43 A.3d 1081, 1092 (Md. App. 2012) (internal quotation marks and citation omitted)). Thus, under either state or federal law, a signatory to a contract cannot seek to avoid that contract's arbitration provision while simultaneously seeking recovery on the basis of the rest of the contract. *See Am. Bankers*, 453 F.3d at 627 ("The legal principle . . . rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." (internal quotation marks and citation omitted)); *Griggs*, 43 A.3d at 1092 ("[I]t would be unfair for a party to rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage." (internal quotation marks and citation omitted)). Lomax is attempting such a feat here.

Lomax's claims against Weinstock are based on its alleged attempt, on behalf of CAC, to collect a deficiency judgment under the RISC, in violation of the CLEC. (*See, e.g.*, Am. Compl.

¶¶ 23, 28, 34, 35, 39). The loan and collection of a deficiency judgment are only subject to the CLEC because Lomax and CAC selected it as the governing law in the RISC. *See Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 328 (4th Cir. 2012) (holding that the CLEC only governs lending agreements where it has been specifically elected as the governing law in the agreement). Lomax is claiming, therefore, a breach of obligations under the RISC. She cannot rely on the RISC to attempt to collect damages from Weinstock and at the same time disclaim its arbitration provision.[6] *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160-61 (4th Cir. 2004) (holding equitable estoppel requires arbitration "when one party attempts 'to hold [another party] to the terms of [an] agreement' while simultaneously trying to avoid the agreement's arbitration clause" (alternation in original) (citation omitted)); *cf. Griggs*, 43 A.3d at 1095-96 (holding a nonsignatory could not enforce an arbitration agreement under the doctrine of equitable estoppel where none of the claims involved a breach of duties or rights arising from the underlying contract). She is thus estopped from claiming Weinstock is not a proper party to the agreement and Weinstock can invoke the arbitration clause in this case.

**II. The Scope of the Arbitration Clause**

Finding that Weinstock can properly invoke the arbitration agreement does not end the court's inquiry. Lomax's claims against Weinstock must also fall within the scope of the agreement. *See Am. Bankers*, 453 F.3d at 630 (noting that determining whether a nonsignatory is a proper party to an arbitration clause is an inquiry different from whether the claims at issue fall

---

[6] In fact, Lomax is attempting to disclaim an arbitration agreement that appears to clearly contemplate she will arbitrate disputes with Weinstock, as the RISC provides that CAC's agents may require any "Dispute" to be arbitrated. (Ross Aff. Ex. A, ECF No. 9-1, at 5). Courts have long recognized attorneys as their clients' agents. *See, e.g.*, *C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) ("The relationship between client and attorney . . . is a quintessential principal-agent relationship."); *Adv. Fin. Co., Inc. v. Trustees of Clients Sec. Trust Fund of the Bar of Md.*, 652 A.2d 660, 663 (noting that "agents are lawyers whose principals are clients"). By filing suit on its behalf, Weinstock was acting as CAC's agent in this case, which Lomax appears to admit. (*See* Am. Compl. ¶ 3; Pl.'s Opp'n, at 2).

within the scope of the clause). The court finds they do.

The arbitration clause at issue here specifies that "a Dispute shall be fully resolved by binding arbitration" and defines "Dispute" to include "any dispute, controversy or claim . . . arising out of or in any way related to this Contract, . . . or the collection of amounts due under this Contract." (Ross Aff. Ex. A, ECF No. 9-1, at 5).[7] The Fourth Circuit "ha[s] consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'" *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)); *see also Griggs*, 43 A.3d at 1088 ("[A] 'broadly worded' arbitration clause triggers 'the significant relationship test.'" (citation omitted)). The arbitration clause at issue has such broad language. To fall within the clause's scope, therefore, Lomax's claims must only have a "significant relationship" to the RISC. They do not have to implicate the terms of the underlying contract. *Am Recovery Corp.*, 96 F.3d at 93. In addition, it is Lomax's factual allegations on which the court's determination turns, not the legal labels of her claims. *Id.*

The factual allegations underlying Lomax's FDCPA, MCDCA, and MCPA claims are that Weinstock attempted to collect a deficiency judgment to which CAC was not entitled because it had not properly complied with Maryland's notice requirements under the CLEC.

---

[7] Although, generally, a court cannot consider anything but the pleadings in deciding a motion to dismiss under Rule 12(b)(6), "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). The RISC is integral to Lomax's complaint and she does not appear to dispute its authenticity.

(*See* Am. Compl. ¶ 39). Such claims clearly have a significant relationship to the RISC. First, Lomax's claims are almost entirely focused on CAC's conduct under the RISC—i.e. its failure to provide proper notice and attempt to collect a deficiency judgment. In fact, as part of her allegations as to why Weinstock could not maintain a suit against her, Lomax claims CAC was "not entitled to any deficiency judgment *under the loan agreement*." (Am. Compl. ¶ 28 (emphasis added)). Second, in order for CAC's alleged failure to comply with the CLEC to even provide a possible basis for recovery, Lomax must demonstrate that CAC's behavior was governed by the CLEC in the first place. (*See* Am. Compl. ¶ 23). This requires her to rely on the terms of the RISC electing the CLEC as governing law. *See Epps*, 675 F.3d at 328. In addition, the arbitration clause expressly covers any disputes arising out of "the collection of amounts due under this Contract;" the contract expressly acknowledges CAC's right to collect a deficiency judgment. (Ross Aff. Ex. A, at 5).[8] Even if the agreement's scope were unclear, any doubts have to be resolved in favor of arbitration. *See Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) ("[W]e may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting *United Steelworkers of Am.v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960))). Lomax's claims, therefore, fall within the scope of the arbitration agreement and she must submit them to arbitration if she wishes to pursue them further.

## CONCLUSION

Because all of Lomax's claims are subject to the arbitration agreement, Weinstock's

---

[8] Lomax's attempt to distinguish claims about amounts due from claims about amounts *not* due, (Pl.'s Opp'n, at 6-7) is completely without merit. Any disagreement regarding what is owed necessarily involves claims about what is not owed. Otherwise there would be no dispute to begin with.

motion to dismiss will be granted.[9]  A separate order follows.


January 15, 2014                                            /s/
        Date                                      Catherine C. Blake
                                                  United States District Judge

---

[9] Because the purported class in the instant case has not been certified, the class does not have a legal status separate from Lomax's individual interest.  *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975); *Boatright v. Aegis Defense Serv., LLC*, 938 F. Supp. 2d 602, 611 (E.D. Va. 2013) (dismissing the plaintiffs' class claims as moot where the court had compelled arbitration of the plaintiffs' individual claims).  Her class claims, therefore, will be dismissed as well.